Richard K. **PHILLIPS** and Marilyn J. Phillips, Petitioners,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 00–70850.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 9, 2001

Filed Dec. 4, 2001

Amended Jan. 14, 2002.

Curtis W. Berner, Larkspur, California, for the petitioners.

John A. Dudeck, Jr., United States Department of Justice, Washington, D.C., for the respondent.

Before: NOONAN, HAWKINS and TASHIMA, Circuit Judges.

NOONAN, Circuit Judge:

Richard K. Phillips and Marilyn J. Phillips (collectively Phillips) appeal the judgment of the Tax Court holding them liable as limited partners for taxes incurred by three livestock breeding partnerships. Phillips contends that a waiver of the three-year statute of limitations was invalidly executed by Walter Jay Hoyt III (Hoyt) the Tax Matters Partner of each of the partnerships. The principal issue on appeal is whether criminal tax investigation of a statutory Tax Matters Partner (the TMP) does, or must, end the TMP's power to act for a partnership. Holding that there is no automatic termination of TMP status by virtue of such an investigation, we affirm the decision of the Tax Court.

FACTS

The facts were stipulated by the parties in skeletal form sufficient to provide, without much flesh, what was necessary to raise the single issue relied on by Phillips. In 1983, Phillips became a limited partner in the Shorthorn Genetic Engineering 1983–2 partnership and claimed losses through the partnership for the taxable years 1980, 1981 and 1982. Phillips later became a limited partner in the Durham Shorthorn Breed Syndicate 1987–E and the Timeshare Breeding Service Joint Venture Partnership and claimed tax deductions through these partnerships. All three partnerships were organized and marketed by Hoyt, who was the general partner in each and also the TMP, the partner under Internal Revenue Code § 6231(a)(7) charged with representing the partnerships in all dealings with the IRS.

On April 23, 1984, the Examination Division of the IRS requested that the Criminal Investigation Division of the IRS investigate Hoyt for allegedly preparing false tax returns for twelve persons who were limited partners in partnerships formed by Hoyt. The Criminal Investigation Division accepted the referral, entered at once on the investigation, and on April 21, 1986, recommended to the Justice Department that Hoyt be criminally prosecuted under I.R.C. § 7206(2). The Justice Department declined prosecution on August 12, 1987. At least by November 6, 1987, Hoyt was aware of the decision by Justice.

On July 28, 1989, the Examination Division referred another tax fraud matter involving Hoyt to the Criminal Investigation Division, which in turn, on October 17, 1989, began to investigate Hoyt. At the same time, the United States Attorney for Portland, Oregon asked the Criminal Investigation Division to join an ongoing grand jury investigation of Hoyt. As of October 2, 1990, it was decided not to prosecute Hoyt. Although later Hoyt was investigated, indicted and convicted of mail fraud, bankruptcy fraud, and money laundering, the record in this case does not include more than the 1984–1987 and the 1989–1990 investigations.

Hoyt executed waivers for the Shorthorn Genetic Engineering 1983–2 Partnership on the following dates when the IRS knew he was under criminal investigation:

9/25/86 for the taxable year ending 12/31/83.

8/1/87 for the taxable year ending 12/31/84. No other extension affecting any of the three partnerships for the tax years in question was signed by Hoyt at times when it is stipulated that he was under investigation. The record does not show what partnerships were the subject of the 1984–1987 investigation or the 1989–1990 investigation.

## PROCEEDINGS

On January 30, 1996, the Commissioner of Internal Revenue notified Phillips of income tax deficiencies for tax years 1980 through 1992. Phillips was already in bankruptcy. On April 29, 1996, the bankruptcy court lifted the automatic stay of litigation and permitted Phillips to file a petition in the Tax Court seeking redetermination of the deficiencies. On May 24, 2000, the Tax Court entered its decision in favor of the Commissioner.

Phillips appeals.

## ANALYSIS

■ A single issue is presented in various forms: that Hoyt was disqualified or should be treated as disqualified from acting as the TMP at the times when he was under criminal investigation by the IRS. The arguments for disqualification will be reviewed in the order they have been presented by counsel.

*Due Process.* The argument is that it was taking of property without due process of law for the Commissioner, believing that Hoyt had engaged in tax fraud, to continue to treat Hoyt as the statutory TMP, who could act in all tax matters for the partnerships. It is reasonable to attribute to the Commissioner what the Examination Division and the Criminal Investigation Division knew. The waivers executed by Hoyt on September 25, 1986 and August 1, 1987 were executed at times, therefore, when the Commissioner knew, or at least believed firmly, that Hoyt had engaged in tax fraud. Nothing in the record, however, shows that the Commissioner knew or believed Hoyt had committed tax fraud on the partnership in which Phillips participated as a partner. The Commissioner's knowledge or belief that Hoyt had been a crook did not create an obligation to so inform Phillips or to remove Hoyt as TMP of the Shorthorn Genetic Engineering 1983–2 Partnership. The Commissioner has no obligation under the Constitution to apprise investors of the character of their TMPs or even of their criminal propensities. Knowledge that Hoyt had once been a criminal was not knowledge that he was acting criminally in a different partnership. Suspicion that he might have been did not trigger a duty to inform persons who might thereby be harmed.

Formulating the argument as an alternative way of arguing due process, Phillips contends that here Hoyt had a disabling

conflict of interest—a fiduciary duty to his partners in conflict with his own self-interest in not antagonizing the IRS at a time when he knew he was under investigation. Phillips puts particular reliance on *Transpac Drilling Venture 1982–12 v. Commissioner*, 147 F.3d 221 (2d Cir.1998).

■ *Transpac* sets out with admirable clarity that a TMP, although created by statute, owes a fiduciary duty to his partners, and that, as the TMP's acts bind his partners, they "secure their due process protection" by his faithful discharge of his fiduciary obligations. *Id.* at 225. But in *Transpac* the court could observe, "The facts of the matter speak for themselves." *Id.* at 227. The IRS had sought waivers of the statute of limitations from the limited partners, who refused to execute them. The IRS then went to three TMPs who knew themselves to be under criminal investigation in connection with the partnership and were cooperating with the government in its case against another partner. As the court observed, they had "a powerful incentive to ingratiate themselves to the government." *Id.* They gave the waivers the IRS wanted. The court properly found the waivers invalid. Trust law, generally, invalidates the transaction of a trustee who is breaching his trust in a transaction in which the other party is aware of the breach. *See Restatement of Trusts*, §§ 288–297. *Transpac* is a salutary application of this rule to the particular case of a TMP who should have been seen by the IRS as laboring under an incapacitating conflict of interest.

Two circumstances differentiate this case. The IRS made no attempt to get waivers from limited partners. The partnerships for which Hoyt was being investigated have not been shown to be the partnerships involved in this case. It is not intuitively obvious that Hoyt did what is a routine accommodation—signing a waiver in order to avoid immediate assessment by the IRS—in order to ingratiate himself in the investigation of his partnerships. Phillips has speculated that Hoyt so acted; he has not proved it.

■ *Treasury Regulations.* The designation of a TMP is effective until termination pursuant to 26 C.F.R. § 301.6231(a)(7)–1(*l*)(1), which provides five ways of termination. Phillips points to subsection (iv) of this regulation, which terminates the designation if "the partnership items of the tax matters partners become nonpartnership items under Section 6231(c) (relating to special enforcement areas)." The statute to which the regulation refers provides, among other things, that, in the case of criminal investigation, partnership items become nonpartnership items "to the extent that the Secretary determines and provides by regulations that to treat items as partnership items will interfere with the effective and efficient enforcement of this title." I.R.C. § 6231(c)(2). The Secretary has issued regulations under this statute, in pertinent part providing:

> The treatment of items as partnership items with respect to a partner under criminal investigation for the violation of the internal revenue laws relating to income tax will interfere with the effective and efficient enforcement of the internal revenue laws. Accordingly, partnership items of such a partner arising in any partnership taxable year ending on or before the last day of the latest taxable year of the partner to which the criminal investigation relates shall be treated as nonpartnership items as of the date on which the partner is notified that he or she is the subject of a criminal investigation and receives written notification from the Service that his or her partnership items shall be treated as nonpartnership items. The partnership

items of a partner who is notified that he or she is the subject of a criminal investigation shall not be treated as nonpartnership items under this section unless and until such partner receives written notification from the Service of such treatment.

Treas. Reg. § 301.6231(c)–5T.

■ Phillips reads the regulation by isolating the statement in the first sentence ("treatment of items as partnership items . . . will interfere") from the rest of the paragraph. Hence, it is argued, a criminal investigation imposes a mandatory obligation to end the partnership treatment. The argument is ingenious but unconvincing. Read as a whole, the regulation vests discretion in the Commissioner to notify a partner that he or she is under criminal investigation. Until such notice is given, partnership items remain partnership items. Hoyt was not given the required notice. The partnership items and his status as TMP remained unaffected.

A fortiori, the argument has no force where, as here, the criminal investigation has not been shown to bear on the partnership whose tax is at issue.

*The Commissioner's Discretion.* As a fallback if the argument on the mandatory force of the regulation fails, Phillips argues that the Commissioner abused his discretion by not terminating Hoyt as TMP of the partnerships. It is not evident why the Commissioner's belief or knowledge of Hoyt's fraud in one matter imposed on the Commissioner an obligation to end his status in the three partnerships at issue. No abuse of discretion has been shown.

For the foregoing reasons, the decision of the Tax Court is AFFIRMED.